DANIEL J. HERLING (SBN 103711)
LINA M. BRENNER (SBN 191075)
DUANE MORRIS LLP
One Market Spear Tower, Suite 2000
San Francisco, CA 94105-1104
Telephone No.: 415.371.2200
Facsimile No.: 415.371.2201

MITCHELL D. COHEN (prospective *pro hac vice*)
DUANE MORRIS LLP
380 Lexington Avenue
New York, NY 10168
Telephone No.: 212.692.1094
Facsimile No.: 212.692.1020

Attorneys for Plaintiff
ALL POINTS CAPITAL CORPORATION

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALL POINTS CAPITAL CORPORATION,<br><br>          Plaintiff,<br><br>   v.<br><br>SCOTT WILLIAMS,<br><br>          Defendant. | Case No. C 05 0832 EDL<br><br>**STIPULATED ENTRY OF JUDGMENT** |

The parties to this action, by the signatures of their counsel of record to this Stipulation, do stipulate and agree as follows:

### Recitals

1. Each counsel who signs this stipulation has all authority required to bind the parties, and the parties' successors, assigns, and heirs, to the terms of this Stipulation and any Judgment resulting from it.

2. The plaintiff in this matter has filed this lawsuit asserting numerous claims and theories of recovery against the defendant.

3. The parties desire to resolve this litigation, and defendant acknowledges and admits that he is liable to All Points Capital Corporation in the amount Three Hundred Forty Four Thousand Five Hundred Ninety-Six Dollars and Twenty-Nine Cents ($344,596.29), plus interest at the rate of ten (10%) percent per annum from May 1, 2005 until paid in full, plus All Points' actual attorneys' fees incurred since the inception of this matter, and applicable costs.

4. The parties concede that this Court has subject matter of this action and that, by agreeing to a judgment in this matter, they voluntarily consent to this Court exercising jurisdiction over their persons.

5. The parties agree that the terms of the proposed Judgment, as set out in Exhibit A hereto and incorporated herein, constitute a full and fair settlement of all claims raised in this matter and that could be raised in this matter and should be entered as the judgment in this action by the Court. This Judgment is intended to and will extinguish all claims that exist or that may exist between the parties to it, known or unknown, as of the date that this Stipulation is signed.

### Terms of Proposed Judgment

1. Plaintiff shall have Judgment against defendant in the sum of Three Hundred Forty Four Thousand Five Hundred Ninety-Six Dollars and Twenty-Nine Cents ($344,596.29) on the claim raised in the First and Second Causes of Action, for Breach of Guaranty, in the Complaint on file in this action.

2. In the event that the defendant fails to make the payments to All Points Capital Corporation as set forth in the Settlement Agreement executed simultaneously herewith, the defendant shall be liable for the actual attorneys' fees, costs and damages incurred by All Points with respect to enforcing and collecting upon any judgment entered herein.

3. All actual or potential claims or counterclaims, whether raised in the Complaint, or Answer, or any other pleadings in this matter or not, and regardless of whether known or unknown, are merged in the Judgment agreed to by the parties and extinguished by the Judgment.

4. The defendant Scott Williams will pay the sums specified in this Judgment to counsel of record for the plaintiff in this matter, in accordance with Sections 3.1 to 3.3 of the Settlement

TOTAL P.03

Jun 16 2005 4:24PM    HP LASERJET 3200

p.4

Agreement attached hereto and incorporated herein. If payment is not made as specified, the plaintiff may execute on this Judgment by any means or remedy available at law for collection of or execution on judgments, including that contained in Section 1 in the Settlement Agreement attached hereto and incorporated herein.

5.  Each of the parties acknowledge that it has thoroughly read and reviewed the terms and provisions of this agreement and is familiar with the same, that the terms and provisions contained herein are clearly understood by it and that it has fully and unconditionally consented to those terms and provisions. Each of the parties further acknowledges that it has had the full benefit and advice of its legal counsel of its own selection, or the opportunity to obtain the benefit and advice of counsel of its own selection, in regard to understanding the terms, meaning and effect of this agreement, and that this agreement has been entered into by each party freely, voluntarily, with full knowledge and without duress.

DATED: ~~May~~ JUNE 20, 2005

DUANE MORRIS LLP

_____
~~Daniel L Herling~~
Lina M. Brenner
Attorneys for Plaintiff
ALL POINTS CAPITAL CORPORATION

DATED: ~~May~~ June 17, 2005

ALL POINTS CAPITAL CORPORATION

_____
CATHERINE WILINSKI
ALL POINTS CAPITAL CORPORATION

DATED: May 31, 2005

_____
SCOTT WILLIAMS

3

JUN-19-2005 21:55    NORTH FORK BANK    16318449760    P.03

**ORDER ON STIPULATION**

The Court has reviewed and accepted this Stipulation as a proper disposition of this matter. Therefore, IT IS ORDERED that the Clerk of this Court enter Judgment in this matter, according to the provisions of Rule 58 of the Federal Rules of Civil Procedure, and in accordance with the terms of this Stipulation Judgment shall be so entered forthwith.

Dated: August 2, 2005

_____
UNITED STATES DISTRICT JUDGE

[Stamp: IT IS SO ORDERED / Elizabeth D. Laporte / Judge Elizabeth D. Laporte / Magistrate]

EXHIBIT A

## SETTLEMENT AGREEMENT

**THIS SETTLEMENT AGREEMENT** (the "Agreement") is made and entered into the latest dated as indicated on the signature page herein by and between plaintiff, All Points Capital Corporation ("All Points" or "Plaintiff") and defendant, Scott Williams ("Williams" or "Defendant").

## RECITALS

**WHEREAS,** on or about October 7, 2002, for good and valuable consideration, Flipside Films, Inc. ("Flipside"), as lessee, entered into a commercial equipment lease agreement and related documents and schedules under lease no. 2111-00130 (hereinafter, as any time amended, "Lease No. 1") with Equipment Finance Corporation (hereinafter, "EFC"), as lessor, pursuant to which Flipside agreed to lease certain equipment identified therein (hereinafter, "Equipment No. 1"); and

**WHEREAS,** on or about January 6, 2003, for good and valuable consideration, Flipside, as lessee, entered into a commercial equipment lease agreement and related documents and schedules under lease no. 2111-00145 (hereinafter, as any time amended, "Lease No. 2") with EFC, as lessor, pursuant to which Flipside agreed to lease certain equipment identified therein (hereinafter, "Equipment No. 2"); and

**WHEREAS,** as set forth in Lease No. 1 and Lease No. 2 (hereinafter, collectively the "Leases"), Flipside agreed to make certain monthly payments to EFC; and

**WHEREAS,** the Leases provide that an event of default will occur thereunder if, among other things, Flipside "ceases doing business as a going concern, makes an assignment for the benefit of creditors, admits in writing its inability to pay its debts as they become due, files a voluntary petition in bankruptcy, is adjudicated a bankrupt or insolvent, files a petition seeking

for itself any reorganization, arrangement, composition, readjustment, liquidation, dissolution or similar arrangements under any present or future statute, law or regulation or files an answer admitting the material allegations of a petition filed against it in any such preceding, consents to or acquiesces in the appointment of a trustee, custodian, receiver or liquidator if it or all of any substantial part of its assets or properties, or of it or its shareholders shall take any action looking to its dissolution or liquidation, or an order for relief is entered under the Bankruptcy Code against the Lessee"; and

**WHEREAS,** in the event of a default under the Leases, EFC is permitted, at its discretion, to, among other things, recover from Flipside, as liquidated damages for loss of a bargain and not as a penalty, a sum equal to the aggregate of the following: (a) all rentals and other sums due under the Leases to the date of default, (b) any expenses paid or incurred by EFC in connection with the repossession, holding, repair and subsequent sale, lease or other disposition of Equipment No. 1 and Equipment No. 2 (hereinafter, collectively the "Equipment") including attorney's fees and legal expense, (c) the present value (using a six (6%) per annum rate) of all monies to be paid by Flipside during the remaining term of the Leases or any successive period then in effect, (d) the present value (using a six (6%) per annum rate) of any sum which EFC may require Flipside to pay upon termination of the Leases under any purchase agreement or otherwise or, if Flipside is not obligated to purchase the Equipment, the present value (using a six (6%) per annum rate) of its estimated residual value at the end of the schedule lease term and (e) interest on the aggregate amounts specified in (a) through (d) from the date of default (or expenditure) at the rate of two percent (2%) per month, if not prohibited by law, otherwise at the highest rate lawfully payable by Flipside; and

**WHEREAS,** for good and valuable consideration, on December 23, 2002, EFC assigned all the rights and remedies, but not the obligations under Lease No. 1, and to Equipment No. 1, to All Points (hereinafter, "Assignment No. 1").

**WHEREAS,** for good and valuable consideration, on May 15, 2003, EFC assigned all the rights and remedies, but not the obligations under Lease No. 2, and to Equipment No. 2, to All Points (hereinafter, "Assignment No. 2").

**WHEREAS,** Flipside did default under the Leases on January 28, 2005 by, among other things, filing a Chapter 7 Bankruptcy Petition in the U.S. Bankruptcy Court, Northern District of California (San Francisco) under Bankruptcy Petition No. 05-30211; and

**WHEREAS,** the filing of a bankruptcy petition by Flipside is a material breach and wrongful repudiation of the Leases;

**WHEREAS,** Williams did, for good and valuable consideration, execute an unconditional guaranty (hereinafter, "Williams Guaranty No. 1") pursuant to which Williams unconditionally and absolutely guaranteed to All Points the prompt repayment when due of all of the obligations of Flipside to All Points under Lease No. 1.

**WHEREAS,** Williams did, for good and valuable consideration, execute an unconditional guaranty ("Williams Guaranty No. 2") pursuant to which Williams unconditionally and absolutely guaranteed to All Points the prompt repayment when due of all of the obligations of Flipside to All Points under Lease No. 2.

**WHEREAS,** All Points has sought to obtain payment of the aforesaid outstanding sums due and owing from Williams in accordance with Williams Guaranty No. 1 and Williams Guaranty No. 2 (collectively, the "Guaranties"); and

NY\280629.1                                    3

WHEREAS, pursuant to the terms of the Guaranties, Williams agreed to pay all costs of collection, including reasonable attorneys' fees and expenses; and

WHEREAS, All Points filed an action against Williams, in the United States District Court for the Northern District of California under Case No. 05 0832 (the "Action"); and

WHEREAS, All Points and Williams are desirous of settling their disputes in accordance with the terms and conditions of this Agreement; and

WHEREAS, each of the Parties (as hereinafter defined) warrants and represents that (i) it has full corporate power and authority to enter into this Agreement, (ii) that no third party approvals are necessary for it to lawfully enter into this Agreement, (iii) the execution of this Agreement will not violate an agreement or Court order binding on said party and (iv) execution of this Agreement is binding on and enforceable against said party.

NOW, THEREFORE, in consideration of the promises and covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the undersigned parties hereto (collectively, the "Parties") hereby agree as follows:

### AGREEMENT

1. **Stipulated Entry of Judgment**

    1.1    Simultaneous with the execution of this Settlement Agreement, Defendant shall execute and deliver to All Points a Stipulated Entry of Judgment ("Stipulated Judgment") in the form attached hereto as Exhibit "A", acknowledging and admitting that he is liable to All Points in the amount of Three Hundred Forty Four Thousand Five Hundred Ninety-Six Dollars and Twenty Nine Cents ($344,596.29), plus interest at the rate of ten (10%) percent per annum from May 1, 2005 until paid in full, plus All Points' actual attorneys' fees incurred since the inception of this matter and applicable costs.

1.2     Should Defendant fail to make proper payment to All Points in accordance with the terms set forth herein (the "Default"), All Points shall give notice of said Default in writing, by regular mail or facsimile, to Defendant at 403 Main Street, #707, San Francisco 94107. If the Default is not cured within ten (10) days from the date that the notice was mailed or faxed, All Points, at its sole option and discretion, may enforce the Stipulated Judgment.

1.3     The outstanding debt shall be reduced by any and all monies received from Defendant pursuant to paragraphs 3 and 5 herein.

2.     **Terms Of Settlement**

2.1     All Points agrees to dismiss the Action as against Defendant, as soon as reasonably practical, with prejudice, upon the final payment as set forth under paragraph 3.

2.2     The Parties agree to execute any further documents which may be necessary to effectuate the transactions contemplated by this Agreement.

2.3     Except as expressly set forth herein, All Points makes no representations or warranties of any kind or nature.

2.4     The Parties warrant and represent that (i) each of the Recitals are true and correct and (ii) they are not aware of any other person or entity holding a claim which is being released herein.

2.5     In the event of a default of any term of this Agreement, the Defendant shall be liable for the actual attorney's fees, costs and damages incurred by All Points with respect to enforcing and collecting any judgment entered herein.

2.6     This Agreement, its interpretation and application shall, in all respects, be governed by and construed in accordance with the laws of the State of California, without giving effect to applicable conflicts of laws principles.

3.     **Settlement Payments**

3.1     In settlement of the Action, and in acknowledgment of credit in the amount of $90,000 for equipment sold under Lease No. 2, Defendant shall pay to All Points the total sum of Three Hundred Forty Four Thousand Five Hundred Ninety-Six Dollars and Twenty Nine Cents ($344,596.29).

3.2     The settlement payments shall be made as follows: On the 1st day of each month, beginning on June 1, 2005 and continuing each month thereafter until and including May 1, 2006, Defendant shall pay All Points, via ACH, bank or certified check, the sum of Five Hundred Dollars ($500.00).  Thereafter, on the 1st day of each month, beginning on June 1, 2006 and continuing each month thereafter until and including May 1, 2007, Defendant shall pay All Points, via ACH, bank or certified check, the sum of One Thousand Dollars ($1,000.00). Thereafter, on June 1, 2007, Defendant shall pay All Points, via ACH, bank or certified check, the then remaining unpaid balance.  Payments will be applied first to reduce accrued interest and then to reduction of the principal balance.  Upon clearance of the final payment as set forth above, All Points shall file with the Court a Satisfaction of Judgment.

3.3     The payments set forth under the preceding paragraph shall be made payable to "All Points Capital Corporation" and delivered to All Points Capital Corporation c/o Ms. Catherine Wilinski, 275 Broad Hollow Road, Melville, New York 11747.

4.   **Sale of Collateral**

4.1   As part of All Points' effort to mitigate its damages, the Equipment listed on attached Schedule "A" has been sold to a third party and the sale proceeds in the amount of Ninety Thousand Dollars ($90,000.00) have been applied to the balance due and owing by Williams to All Points under the Leases and Guaranties.

4.2   Williams shall use his best efforts to sell the remaining Equipment listed in attached Schedule "B" in a commercially reasonable manner to a third party. If the Equipment is not sold to a third party within ninety (90) days hereof, the Parties agree that Williams, at his sole cost and expense, will transfer the Equipment to a public auctioneer selected by Williams, and the Equipment shall be sold by said public auctioneer at a public auction. The proceeds obtained as a result of the public auction, less any expenses incurred from the sale, will be paid directly to All Points and applied to the amounts due and owing by Williams to All Points under the Leases and Guaranties.

5.   **Release and Indemnification**

5.1   Except as expressly set forth in this Agreement, upon execution and delivery of this Agreement, Defendant, for and on behalf of his predecessors, successors, assigns, transferees, representatives, attorneys, employees, officers, directors, agents, and shareholders hereby unconditionally release All Points and each of its parents, subsidiaries, affiliates, divisions, stock holders, agents, servants, employees, officers, directors, successors, transferees, assigns, representatives and attorneys, from any and all causes of action, defenses, setoffs, counterclaims, causes of action and claims for relief of every nature, whether known or unknown, suspected or unsuspected, that are now held, have at any time been held or may at any

time be held against All Points that have been or could have been asserted by reason of any acts, circumstances or transactions occurring through the date of execution of this Agreement.

5.2     Except as expressly set forth in this Agreement, upon execution and delivery of this Agreement, All Points, for and on behalf of its predecessors, successors, assigns, transferees, representatives, attorneys, employees, officers, directors, agents, and shareholders hereby unconditionally release Defendant and each of his parents, subsidiaries, affiliates, divisions, stock holders, agents, servants, employees, officers, directors, successors, transferees, assigns, representatives and attorneys, from any and all causes of action, defenses, setoffs, counterclaims, causes of action and claims for relief of every nature, whether known or unknown, suspected or unsuspected, that are now held, have at any time been held or may at any time be held against Defendant that have been or could have been asserted by reason of any acts, circumstances or transactions occurring through the date of execution of this Agreement.

6.     **Waiver of California Civil Code §1542.**

Each of the parties represent, acknowledge, and agree that they are aware of the existence and meaning of California Civil Code §1542 and have been fully informed by their respective counsel as to the contents of the provisions of California Civil Code §1542, which provides as follows:

> A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

With respect to the matters released by this Agreement, each Party hereby expressly waives and relinquishes any and all rights and benefits which it may have or had under California Civil Code §1542. The Parties further represent, acknowledge, and agree that their

knowing and voluntary waiver of the provisions of California Civil Code §1542 is an essential and material term of this Agreement, and that without such a waiver this Agreement would not have been entered into.

7.  **Familiarity With Terms of Settlement Agreement**

7.1    Each of the parties acknowledge that it has thoroughly read and reviewed the terms and provisions of this Agreement and is familiar with the same, that the terms and provisions contained herein are clearly understood by it and that it has fully and unconditionally consented to those terms and provisions. Each of the parties further acknowledges that it has had the full benefit and advice of its legal counsel of its own selection, or the opportunity to obtain the benefit and advice of counsel of its own selection, in regard to understanding the terms, meaning and effect of this Agreement, and that this Agreement has been entered into by each party freely, voluntarily, with full knowledge and without duress.

8.  **Entire Agreement and Severability**

8.1    This Agreement contains all the terms and conditions agreed upon by the Parties, and shall not be modified except by written instruments signed by all of the Parties.

8.2    If any provision of the settlement agreement or the application thereof is held to be invalid, the invalidity shall not affect other provisions or other applications of the Agreement, which can be given without the invalid provisions or applications. To this end, the provisions of the Agreement are declared to be severable.

9. **Execution and Counterparts**

   9.1  This Agreement is ten (10) pages. It may be executed in any number of copies by the Parties on separate counterparts and will become effective upon signature of all parties upon one or more such counterparts.

   9.2  This Agreement may be executed by facsimile and shall be deemed an original document.

Dated: ~~May~~ June 17, 2005

ALL POINTS CAPITAL CORPORATION
By: _____
Title: V.P

Dated: May 31, 2005

SCOTT WILLIAMS